THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PARK MERIDIAN CONDOMINIUM ASSOCIATION,<br><br>      Plaintiff,<br> v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>      Defendant. | CASE NO. C18-1645-JCC<br><br>ORDER |

This matter comes before the Court on Defendant State Farm Fire & Casualty Company's motion for partial summary judgment (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I.  BACKGROUND

Plaintiff maintains the Park Meridian condominium complex, which consists of nine buildings and 77 condo units (the "Complex"). (Dkt. No. 1 at 1–2.) The ground-floor condo units have concrete patios, while the second- and third-floor condo units have wood decks. (Dkt. No. 18 at 6.) Defendant sold insurance policies covering the Complex to Plaintiff, effective from May 15, 1987 to May 15, 2006, subject to a series of renewals (the "Policy"). (*See* Dkt. No. 1 at 2–3.)

Records of the 1987 to 1990 policy provisions are unavailable. (*See* Dkt. No. 19-7 at 3.) As of May 1990, the Policy enumerated a number of losses caused by water that were not covered, including "continuous or repeated seepage or leakage of water that occurs over a period of time; . . . [and] collapse, except as provided in the Extensions of Coverage." (Dkt. No. 12 at 49–51.) From May 1990 to May 1998, the Policy's Extension of Coverage for Collapse provided that "[Defendant] will pay for any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by . . . hidden decay[] . . . ." (Dkt. No. 19-7 at 4–5.) The 1998 Policy renewal included Amendatory Collapse Endorsement, FE-6551, which provided that:

> [Defendant] insure[s] only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.
>
> Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.
>
> The collapse must be directly and immediately caused only by . . . hidden decay of a supporting or weight-bearing structural member of the building[] . . . .

(*Id.* at 5–6.)

In July 1998, Plaintiff submitted a claim to Defendant for coverage of decay occurring in decks of various units of the Complex (the "1998 Claim"). (*See* Dkt. Nos. 10 at 3–4, 19-1, 19-2.) Defendant retained Pacific Engineering to investigate the 1998 Claim. (Dkt. Nos. 10 at 3, 19-3, 19-4.) Based on Pacific Engineering's reports, Defendant decided that some, but not all, of the decay would be covered under the Policy's Extension of Coverage for Collapse (collectively, the "1998–99 Decisions"). (*See* Dkt. Nos. 10 at 2–4, 12 at 47–112.) Defendant paid $275,448.17 for coverage of the 1998 Claim. (Dkt. No. 19-7 at 2.)

Defendant's 2002 Policy renewal included Amendatory Collapse Endorsement, FE-6573, which "removed hidden decay as a covered cause of collapse loss under the Extension of Coverage for Collapse." (*Id.* at 6.)

In September 2017, Plaintiff hired J2 Building Consultants ("J2") to investigate the Complex for decay or damage. (*See* Dkt. No. 1 at 3.) J2 issued a Findings Report "detail[ing]

water damage to exterior wall sheathing and framing as well as hidden damage to decks throughout the [Complex]" (the "J2 Report"). (*Id.*; *see also* Dkt. No. 20-1.) In October 2017, Plaintiff submitted a claim to Defendant "for hidden damage detailed in the J2 [R]eport," seeking coverage for losses due to "wind-driven rain and/or collapse" (the "2017 Claim"). (Dkt. Nos. 10 at 3, 21-4 at 2.) Defendant retained Jim Perrault of JRP Engineering to investigate the 2017 Claim, and Mr. Perrault issued a report on June 29, 2018 detailing his findings (the "Perrault Report"). (Dkt. No. 19-7 at 2–3.)

Defendant alleges that it did not evaluate potential coverage under Policy terms effective from May 15, 1987 to May 15, 1990 because it failed to locate the Policy in effect at that time. (Dkt. No. 19-7 at 3.) Plaintiff alleges that "[Defendant] was aware that [] from 1987-1990 special form 3 policy covered because it did not exclude damage from water intrusion, but refused to inform [Plaintiff] of this coverage . . . ." (Dkt. No. 1 at 4.) Plaintiff believes that "special form 3" describes Defendant's all-risk coverage form. (*Id.* at 3.) Plaintiff states that "[o]n information and belief the loss or damage to the [Complex] was incremental and progressive. New damage commenced during each year of the [Policy]." (*Id.* at 4.) However, according to the Perrault Report, the decay discovered in 2017 did not result from damage occurring between May 15, 1998 and May 15, 2002. (*See* Dkt. No. 21-5.)

Based on the Perrault Report, on July 12, 2018 Defendant denied coverage of the 2017 Claim under the Policy terms effective from May 15, 1990 to May 15, 2006 (the "2018 Decision Letter"). (Dkt. Nos. 10 at 3, 19-7 at 9.) Plaintiff filed suit on November 13, 2018, seeking declaratory relief and alleging state law claims for breach of contract, bad faith, and violation of the Washington Consumer Protection Act ("CPA"). (*See* Dkt. No. 1.) Defendant moves for partial summary judgment, asserting that "Plaintiff's [2017 Claim] relating to [Defendant's 1998–99 Decisions] [is] now barred by applicable statutes of limitations." (Dkt. Nos. 8, 10 at 6.) Defendant does not address Plaintiff's claim for declaratory relief in its motion. (*See* Dkt. Nos. 10, 22.)

## II. DISCUSSION

### A. Summary Judgment Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of showing the absence of a genuine dispute of material fact, supported by materials such as the pleadings, depositions, admissions on file, and any affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). If the movant meets this burden, then the nonmovant must demonstrate, from more than the pleadings alone, a genuine dispute of material fact. *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(c).

Facts are considered material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence could lead a reasonable jury to return a verdict for the nonmovant. *Id.* The Court must view the facts and reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant. *Id.* at 255.

### B. Statute of Limitations

A limitations period generally commences when a party has a right to seek relief in the courts—when the party can establish each element of an action. *See Bush v. Safeco Ins. Co.*, 596 P.2d 1357, 1358 (Wash. Ct. App. 1979); *see also Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App. 2014). Although Defendant couches its motion in terms of the statutes of limitations, the crux of the motion is that the 2017 Claim is identical to the 1998 Claim, and thus any arguments about improper denials of coverage from the 1998 Claim are time-barred. (*See generally* Dkt. No. 10.) Plaintiff responds that the 2017 Claim is distinct from the 1998 Claim, in part because the damaged property is different and because the observed decay on the decks occurred post-2000. (*See* Dkt. No. 18 at 11–13.)

### C. Claim Comparisons

Defendant's investigation of the 1998 Claim uncovered decay in carports, decks, and

adjoining walls of the Complex. (Dkt. No. 22 at 5–6.) Defendant's 1998–99 Decisions extended coverage for decay occurring at: some of the decks at certain Complex units; the Building 7, Unit 202 deck and closet walls; the Building 6, Unit 301 deck and closet walls; the Building 8, Unit 301 deck and closet walls; the Building 3, Units 202 and 203 decks; the Unit 202 stair landing; the "[s]outh wall of the stair tower for the 03 stack of units"; and various carport structures. (*See* Dkt. No. 12 at 47–48, 62, 68, 86–87, 104–05.) The 1998–99 Decisions also denied coverage for decay at some of the decks and carports. (*Id.* at 54–56, 93–94.)

Plaintiff relied on the J2 Report when it submitted the 2017 Claim, in which it seeks coverage of damage to exterior walls of the Complex. (*See* Dkt. No. 21-4.) The J2 Report contains findings of decay on decks, carports, windows, sheathing, and wall framing. (*See* Dkt. No. 20-1 at 4–13.) There are some similarities between the damage observations underlying the 1998 Claim and the 2017 Claim. For example, the J2 Report indicates that decay was primarily observed "at deck integrations and deck fascia." (Dkt. No. 21-4 at 2.) However, the J2 Report identifies specific instances of decay that were not addressed in the 1998 Claim, such as decay in wall framing and surrounding various windows. (*Compare* Dkt. No. 20-1 at 9–13, *with* Dkt. No. 12 at 47–48, 54–56, 62, 68, 86–87, 93–94, 104–05; *see also* Dkt. No. 21-5 at 5–7 (providing a building number key)).

Defendant relied on the Perrault Report when it denied coverage of the 2017 Claim. (*See* Dkt. No. 19-7.) The Perrault Report identifies decay in decks, windows, and wall framing. (Dkt. No. 21-5.) Again, although there are similarities between the damage observations underlying the 1998 Claim and the 2017 Claim, the Perrault Report identifies instances of decay that were not addressed in the 1998 Claim, such as decay in the wall framing surrounding greenhouse windows. (*Compare id.* at 4–7, *with* Dkt. No. 12 at 47–48, 54–56, 62, 68, 86–87, 104–05.)[1]

---

[1] Defendant argues that the claims are the same because a number of the greenhouse windows are located next to the decks. (Dkt. No. 22 at 5.) However, this proximity argument does not prove that the claims are identical.

Based on the J2 Report and Perrault Report's observations of decay that were not at issue in the 1998 Claim, and Plaintiff's argument that deck decay observed in 2017 resulted from new post-2000 damage, a reasonable jury could determine that the 1998 Claim and the 2017 Claim are different. *See Anderson*, 477 U.S. at 248. Therefore, there is a genuine dispute about whether the 1998 Claim and the 2017 Claim are the same.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment (Dkt. No. 10) is DENIED.[2]

DATED this 13th day of August 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[2] The Court reached this decision without reference to the excerpts in the declarations supporting Plaintiff's response (Dkt. No. 18) disputed in Defendant's motion to strike. (*See* Dkt. No. 22 at 1–4.) Therefore, Defendant's motion to strike is DENIED.